# EXHIBIT A

I

109TH CONGRESS
2D SESSION

# H. R. 5556

To establish a unified national hazard alert system, and for other purposes.

———————————————

## IN THE HOUSE OF REPRESENTATIVES

JUNE 8, 2006

Mr. SHIMKUS (for himself, Mr. WYNN, Mrs. BONO, Mr. ENGLISH of Pennsylvania, and Mr. MELANCON) introduced the following bill; which was referred to the Committee on Energy and Commerce, and in addition to the Committee on Science, for a period to be subsequently determined by the Speaker, in each case for consideration of such provisions as fall within the jurisdiction of the committee concerned

———————————————

# A BILL

To establish a unified national hazard alert system, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2    *tives of the United States of America in Congress assembled,*

3    **SECTION 1. SHORT TITLE.**

4    This Act may be cited as the "Warning, Alert, and

5    Response Network Act".

6    **SEC. 2. NATIONAL ALERT SYSTEM.**

7    (a) ESTABLISHMENT.—There is established a vol-

8    untary National Alert System to provide a public commu-

9    nications system capable of alerting the public on a na-

2

1 tional, regional, or local basis to emergency situations re-

2 quiring a public response.

3     (b) FUNCTIONS.—The National Alert System—

4         (1) will enable any Federal, State, tribal, or

5         local government official with credentials issued by

6         the National Alert Office under section 103 to alert

7         the public to any imminent threat that presents a

8         significant risk of injury or death to the public;

9         (2) will be coordinated with and supplement ex-

10         isting Federal, State, tribal, and local emergency

11         warning and alert systems;

12         (3) will be flexible enough in its application to

13         permit narrowly targeted alerts in circumstances in

14         which only a small geographic area is exposed or po-

15         tentially exposed to the threat; and

16         (4) will transmit alerts across the greatest pos-

17         sible variety of communications technologies, includ-

18         ing digital and analog broadcasts, cable and satellite

19         television, satellite and terrestrial radio, wireless

20         communications, wireline communications, and the

21         Internet to reach the largest portion of the affected

22         population.

23     (c) CAPABILITIES.—The National Alert System—

24         (1) shall incorporate multiple communications

25         technologies and be designed to adapt to, and incor-

3

1    porate, future technologies for communicating di-

2    rectly with the public;

3       (2) may not interfere with existing alert, warn-

4    ing, priority access, or emergency communications

5    systems employed by Federal, State, tribal, or local

6    emergency response personnel and shall incorporate

7    existing emergency alert technologies, including the

8    NOAA All-Hazards Radio System, digital and ana-

9    log broadcast, cable, and satellite television and sat-

10    ellite and terrestrial radio; and

11       (3) shall not be based upon any single tech-

12    nology or platform, but shall be designed to provide

13    alerts to the largest portion of the affected popu-

14    lation feasible and improve the ability of remote

15    areas to receive alerts.

16    (d) RECEPTION OF ALERTS.—The National Alert

17  System shall—

18       (1) utilize multiple technologies for providing

19    alerts to the public, including technologies that do

20    not require members of the public to activate a par-

21    ticular device or use a particular technology to re-

22    ceive an alert provided via the National Alert Sys-

23    tem; and

24       (2) provide redundant alert mechanisms where

25    practicable so as to reach the greatest number of

4

1    people regardless of whether they have access to, or

2    utilize, any specific medium of communication or

3    any particular device.

**SEC. 3. IMPLEMENTATION AND USE.**

5    (a) AUTHORITY TO ACCESS SYSTEM.—

6        (1) IN GENERAL.—The National Alert Office

7    shall establish a process for issuing credentials to

8    Federal, State, tribal, or local government officials

9    with responsibility for issuing safety warnings to the

10   public that will enable them to access the National

11   Alert System.

12       (2) REQUESTS FOR CREDENTIALS.—Requests

13   for credentials from Federal, State, tribal, and local

14   government agencies shall be submitted to the Office

15   by the head of the Federal department or agency, or

16   the governor of the State or the elected leader of a

17   Federally recognized Indian tribe, concerned, for re-

18   view and approval.

19       (3) SCOPE AND LIMITATIONS OF CREDEN-

20   TIALS.—The Office shall—

21           (A) establish eligibility criteria for issuing,

22       renewing, and revoking access credentials;

23           (B) limit credentials to appropriate geo-

24       graphic areas or political jurisdictions; and

5

1          (C) ensure that the credentials permit use

2      of the National Alert System only for alerts

3      that are consistent with the jurisdiction, author-

4      ity, and basis for eligibility of the individual to

5      whom the credentials are issued to use the Na-

6      tional Alert System.

7      (4) PERIODIC TRAINING.—The Office shall—

8          (A) establish a periodic training program

9      for Federal, State, tribal, or local government

10     officials with credentials to use the National

11     Alert System; and

12         (B) require such officials to undergo peri-

13     odic training under the program as a pre-

14     requisite for retaining their credentials to use

15     the system.

16  (b) ALLOWABLE ALERTS.—

17     (1) IN GENERAL.—Any alert transmitted via

18  the National Alert System, other than an alert de-

19  scribed in paragraph (3), shall meet 1 or more of

20  the following requirements:

21         (A) An alert shall notify the public of a

22     hazardous situation that poses an imminent

23     threat to the public health or safety.

24         (B) An alert shall provide appropriate in-

25     structions for actions to be taken by individuals

6

1 affected or potentially affected by such a situa-
2 tion.

3     (C) An alert shall transmit public address-
4 es by Federal, State, tribal, or local officials
5 when necessary.

6     (D) An alert shall notify the public of
7 when the hazardous situation has ended or has
8 been brought under control.

9 (2) EVENT ELIGIBILITY REGULATIONS.—The
10 director of the National Alert Office, in consultation
11 with the Working Group, shall by regulation speci-
12 fy—

13     (A) the classes of events or situations for
14 which the National Alert System may be used
15 to alert the public; and

16     (B) the content of the types of alerts that
17 may be transmitted by or through use of the
18 National Alert System, which may include—

19         (i) notifications to the public of a haz-
20 ardous situation that poses an imminent
21 threat to the public health or safety accom-
22 panied by appropriate instructions for ac-
23 tions to be taken by individuals affected or
24 potentially affected by such a situation;
25 and

7

     (ii) when technologically feasible pub-

1     lic addresses by Federal, State, tribal, or

2     local officials if necessary.

4  (c) ACCESS POINTS.—The National Alert System

5 shall provide—

6   (1) secure, widely dispersed multiple access

7 points to Federal, State, or local government offi-

8 cials with credentials that will enable them to ini-

9 tiate alerts for transmission to the public via the

10 National Alert System; and

11   (2) system redundancies to ensure functionality

12 in the event of partial system failures, power fail-

13 ures, or other interruptive events.

14  (d) ELECTION TO CARRY SERVICE.—

15   (1) AMENDMENT OF LICENSE.—Within 60 days

16 after the date on which the National Alert Office

17 adopts relevant technical standards based on rec-

18 ommendations of the Working Group, the Federal

19 Communications Commission shall initiate a pro-

20 ceeding and subsequently issue an order—

21    (A) to allow any licensee providing com-

22    mercial mobile service (as defined in section

23    332(d)(1) of the Communications Act of 1934

24    (47 U.S.C. 332(d)(1))) to transmit National

8

1    Alert System alerts to all subscribers to, or
2    users of, such service; and

3        (B) to require any such licensee who elects
4    under paragraph (2) not to participate in the
5    transmission of National Alert System alerts, to
6    provide clear and conspicuous notice at the
7    point of sale of any devices with which its serv-
8    ice is included, that it will not transmit Na-
9    tional Alert System alerts via its service.

10   (2) ELECTION TO CARRY SERVICE.—

11       (A) IN GENERAL.—Within 30 days after
12   the Commission issues its order under para-
13   graph (1), each such licensee shall file an elec-
14   tion with the Commission with respect to
15   whether or not it intends to participate in the
16   transmission of National Alert System alerts.

17       (B) PARTICIPATION.—If a licensee elects
18   to participate in the transmission of National
19   Alert System alerts, the licensee shall certify to
20   the National Alert Office that it will participate
21   in a manner consistent with the standards and
22   protocols implemented by the National Alert
23   Office.

24       (C) ADVERTISING.—Nothing in this Act
25   shall be construed to prevent a licensee from

9

1    advertising that it participates in the trans-

2    mission of National Alert System alerts.

3    (D) WITHDRAWAL FROM OR LATER ENTRY

4    INTO SYSTEM.—The Commission shall establish

5    a procedure for—

6    (i) participating licensees to withdraw

7    from the National Alert System upon noti-

8    fication of its withdrawal to its existing

9    subscribers; and

10    (ii) licensees to enter the National

11    Alert System at a date later than provided

12    in subparagraph (A).

13    (E) CONSUMER CHOICE TECHNOLOGY.—

14    Any licensee electing to participate in the trans-

15    mission of National Alert System alerts may

16    offer subscribers the capability of preventing

17    the subscriber's device from receiving alerts

18    broadcast by the system other than an alert

19    issued by the President.

20    (e) DIGITAL TELEVISION TRANSMISSION TOWERS.—

21    (1) RETRANSMISSION CAPABILITY.—Within 30

22    days after the date of enactment of this Act, the

23    Federal Communications Commission shall initiate a

24    proceeding to require public broadcast television li-

25    censees and permittees to install necessary equip-

10

1    ment and technologies on, or as part of, any broad-

2    cast television digital signal transmitter to enable

3    the transmitter to serve as a backbone for the recep-

4    tion, relay, and retransmission of National Alert

5    System alerts.

6        (2) COMPENSATION.—The National Alert Office

7    established by section 104 shall compensate any

8    such licensee or permittee for costs incurred in com-

9    plying with the requirements imposed pursuant to

10    paragraph (1).

11    (f) FCC REGULATION OF COMPLIANCE.—Except as

12    provided in subsections (d) and (e), the Federal Commu-

13    nications Commission shall have no regulatory authority

14    under this Act except to regulate compliance with this Act

15    by licensees and permittees regulated by the Commission

16    under the Communications Act of 1934 (47 U.S.C. 151

17    et seq.).

18    (g) LIMITATION OF LIABILITY.—Any person that

19    participates in the transmission of National Alert System

20    alerts and that meets its obligations under this Act shall

21    not be liable to any subscriber to, or user of, such person's

22    service or equipment—

23        (1) for any act or omission related to or any

24    harm resulting from the transmission of, or failure

11

1    to transmit, a National Alert System alert to such

2    subscriber or user; or

3        (2) for the release to a government agency or

4    entity, public safety, fire service, law enforcement of-

5    ficial, or emergency facility of subscriber information

6    used in connection with delivering an alert.

7    (h) TESTING.—The director shall establish testing

8 criteria and guidelines for licensees that elect to partici-

9 pate in the transmission of National Alert System alerts.

10 **SEC. 4. NATIONAL ALERT OFFICE.**

11    (a) ESTABLISHMENT.—

12        (1) IN GENERAL.—The National Alert Office is

13    established within the National Telecommunications

14    and Information Administration.

15        (2) DIRECTOR.—The office shall be headed by

16    a director with at least 5 years' operational experi-

17    ence in the management and issuance of warnings

18    and alerts, hazardous event management, or disaster

19    planning.

20        (3) STAFF.—The office shall have a staff with

21    significant technical expertise in the communications

22    industry. The director may request the detailing,

23    with or without reimbursement, of staff from any

24    appropriate Federal department or agency in order

25    to ensure that the concerns of all such departments

12

1   and agencies are incorporated into the daily oper-
2   ation of the National Alert System.

3   (b) FUNCTIONS AND RESPONSIBILITIES.—

4       (1) IN GENERAL.—The Office shall administer,
5   operate, and manage the National Alert System.

6       (2) IMPLEMENTATION OF WORKING GROUP
7   RECOMMENDATIONS.—The Office shall be respon-
8   sible for implementing the recommendations of the
9   Working Group established by section 105 regard-
10  ing—

11          (A) the technical transmission of alerts;

12          (B) the incorporation of new technologies
13      into the National Alert System;

14          (C) the technical capabilities of the Na-
15      tional Alert System; and

16          (D) any other matters that fall within the
17      duties of the Working Group.

18      (3) TRANSMISSION OF ALERTS.—In administering
19  the National Alert System, the director of the National
20  Alert Office shall ensure that—

21          (A) the National Alert System is available to,
22      and enables, only Federal, State, tribal, or local gov-
23      ernment officials with credentials issued by the Na-
24      tional Alert Office under section 103 to access and
25      utilize the National Alert System;

13

1        (B) the National Alert System is capable of

2    providing geographically targeted alerts where such

3    alerts are appropriate;

4        (C) the legitimacy and authenticity of any prof-

5    fered alert is verified before it is transmitted;

6        (D) each proffered alert complies with formats,

7    protocols, and other requirements established by the

8    Office to ensure the efficacy and usefulness of alerts

9    transmitted via the National Alert System;

10       (E) the security and integrity of a National

11   Alert System alert from the point of origination to

12   delivery is maintained; and

13       (F) the security and integrity of the National

14   Alert System is maintained and protected.

15   (c) REPORTS.—

16       (1) ANNUAL REPORTS.—The director shall sub-

17   mit an annual report to the Senate Committee on

18   Commerce, Science, and Transportation, the House

19   of Representatives Committee on Energy and Com-

20   merce, and the House of Representatives Committee

21   on Science on the status of, and plans for, the Na-

22   tional Alert System. In the first annual report, the

23   director shall report on—

14

1         (A) the progress made toward operational

2         activation of the alerting capabilities of the Na-

3         tional Alert System; and

4         (B) the anticipated date on which the Na-

5         tional Alert System will be available for utiliza-

6         tion by Federal, State, and local officials.

7     (2) 5-YEAR PLAN.—Within 1 year after the

8 date of enactment of this Act and every 5 years

9 thereafter, the director shall publish a 5-year plan

10 that outlines future capabilities and communications

11 platforms for the National Alert System. The plan

12 shall serve as the long-term planning document for

13 the Office.

14 (d) GAO AUDITS.—

15     (1) IN GENERAL.—The Comptroller General

16 shall audit the National Alert Office every 2 years

17 after the date of enactment of this Act and transmit

18 the findings thereof to the Senate Committee on

19 Commerce, Science, and Transportation, the House

20 of Representatives Committee on Energy and Com-

21 merce, and the House of Representatives Committee

22 on Science.

23     (2) RESPONSE REPORT.—If, as a result of the

24 audit, the Comptroller General expresses concern

25 about any matter addressed by the audit, the direc-

15

1     tor of the National Alert Office shall transmit a re-

2     port to the Senate Committee on Commerce,

3     Science, and Transportation, the House of Rep-

4     resentatives Committee on Energy and Commerce,

5     and the House of Representatives Committee on

6     Science describing what action, if any, the director

7     is taking to respond to any such concern.

**8 SEC. 5. NATIONAL ALERT SYSTEM WORKING GROUP.**

9     (a) ESTABLISHMENT.—Not later than 60 days after

10 the date of enactment of this Act, the director of the Na-

11 tional Alert Office shall establish a working group, to be

12 known as the National Alert System Working Group.

13     (b) MEMBERSHIP.—

14         (1) APPOINTMENT; CHAIR.—The director shall

15         appoint the members of the Working Group as soon

16         as practicable after the date of enactment of this

17         Act and shall serve as its chair. In appointing mem-

18         bers of the Working Group, the director shall ensure

19         that the number of members appointed under para-

20         graph (5) provides appropriate and adequate rep-

21         resentation for all stakeholders and interested and

22         affected parties.

23         (2) FEDERAL AGENCY REPRESENTATIVES.—

24         The director shall appoint appropriate personnel

25         from the National Institute of Standards and Tech-

16

1 nology, the National Oceanic and Atmospheric Ad-

2 ministration, the Federal Communications Commis-

3 sion, the Federal Emergency Management Agency,

4 the Nuclear Regulatory Commission, and the De-

5 partment of Justice to serve as members of the

6 Working Group. The director may also appoint rep-

7 resentatives of other appropriate Federal agencies to

8 serve as members of the Working Group.

9 (3) STATE, LOCAL, AND TRIBAL GOVERNMENT

10 REPRESENTATIVES.—The director shall appoint rep-

11 resentatives of State, local, and tribal governments

12 and representatives of emergency services personnel,

13 selected from among individuals nominated by na-

14 tional organizations representing such governments

15 and personnel, to serve as members of the Working

16 Group.

17 (4) SUBJECT MATTER EXPERTS.—The director

18 shall appoint individuals who have the requisite tech-

19 nical knowledge and expertise to assist the Working

20 Group in the fulfillment of its duties, including rep-

21 resentatives of—

22 (A) communications service providers;

23 (B) vendors, developers, and manufactur-

24 ers of systems, facilities; equipment, and capa-

17

bilities for the provision of communications services;

(C) third-party service bureaus;

(D) the national organization representing the licensees and permittees of noncommercial broadcast television stations; and

(E) other individuals with technical expertise that would enhance the National Alert System.

(c) DUTIES OF THE WORKING GROUP.—

(1) DEVELOPMENT OF SYSTEM-CRITICAL RECOMMENDATIONS.—Within 1 year after the date of enactment of this Act, the Working Group shall develop and transmit to the National Alert Office recommendations for—

(A) protocols, including formats, source or originator identification, threat severity, hazard description, and response requirements or recommendations, for alerts to be transmitted via the National Alert System that ensures that alerts are capable of being utilized across the broadest variety of communication technologies, at National, State, and local levels;

18

1     (B) procedures for verifying, initiating,

2     modifying, and canceling alerts transmitted via

3     the National Alert System;

4     (C) guidelines for the technical capabilities

5     of the National Alert System;

6     (D) guidelines for technical capability that

7     provides for the priority transmission of Na-

8     tional Alert System alerts;

9     (E) guidelines for other capabilities of the

10     National Alert System as specified in this Act;

11     and

12     (F) standards for equipment and tech-

13     nologies used by the National Alert System.

14     (2) INTEGRATION OF EMERGENCY AND NA-

15 TIONAL ALERT SYSTEMS.—The Working Group shall

16 work with the operators of nuclear power plants and

17 other critical infrastructure facilities to integrate

18 emergency alert systems for those facilities with the

19 National Alert System.

20 (d) MEETINGS.—

21     (1) INITIAL MEETING.—The initial meeting of

22 the Working Group shall take place not later than

23 60 days after the date of the enactment of this Act.

19

1　　　　(2) OTHER MEETINGS.—After the initial meet-
2　　ing, the Working Group shall meet at the call of the
3　　chair.

4　　　　(3) NOTICE; OPEN MEETINGS.—Any meetings
5　　held by the Working Group shall be duly noticed at
6　　least 14 days in advance and shall be open to the
7　　public.

8　　(e) RESOURCES.—

9　　　　(1) FEDERAL AGENCIES.—The Working Group
10　　shall have reasonable access to—

11　　　　　　(A) materials, resources, data, and other
12　　　　information from the National Institute of
13　　　　Standards and Technology, the Department of
14　　　　Commerce and its agencies, the Department of
15　　　　Homeland Security and its bureaus, and the
16　　　　Federal Communications Commission; and

17　　　　　　(B) the facilities of any such agency for
18　　　　purposes of conducting meetings.

19　　　　(2) GIFTS AND GRANTS.—The Working Group
20　　may accept, use, and dispose of gifts or grants of
21　　services or property, both real and personal, for pur-
22　　poses of aiding or facilitating the work of the Work-
23　　ing Group. Gifts or grants not used at the expiration
24　　of the Working Group shall be returned to the donor
25　　or grantor.

20

1   (f) RULES.—

2       (1) QUORUM.—One-third of the members of the

3   Working Group shall constitute a quorum for con-

4   ducting business of the Working Group.

5       (2) SUBCOMMITTEES.—To assist the Working

6   Group in carrying out its functions, the chair may

7   establish appropriate subcommittees composed of

8   members of the Working Group and other subject

9   matter experts as deemed necessary.

10      (3) ADDITIONAL RULES.—The Working Group

11  may adopt other rules as needed.

12  (g) FEDERAL ADVISORY COMMITTEE ACT.—Neither

13  the Federal Advisory Committee Act (5 U.S.C. App.) nor

14  any rule, order, or regulation promulgated under that Act

15  shall apply to the Working Group.

16  **SEC. 6. RESEARCH AND DEVELOPMENT.**

17      (a) IN GENERAL.—The director shall establish an ex-

18  tramural research and development program to support

19  the development of technology that will enable all existing

20  and future providers of communications services and all

21  existing and future communications devices to be utilized

22  effectively with the National Alert System.

23      (b) FUNCTIONS.—In carrying out subsection (a) the

24  director shall—

21

1        (1) fund research and development which may
2    include academia, the private sector, and govern-
3    ment laboratories; and
4        (2) ensure that the program addresses, at a
5    minimum—
6            (A) developing innovative technologies that
7        will transmit geographically targeted emergency
8        messages to the public;
9            (B) enhancing participation in the national
10       alert system;
11           (C) understanding and improving public
12       response to warnings; and
13           (D) enhancing the ability of local commu-
14       nities to integrate the National Alert System
15       into their overall operations management.
16   (c) USE OF EXISTING PROGRAMS AND RE-
17   SOURCES.—In developing the program, the director shall
18   utilize existing programs and expertise of the Department
19   of Commerce, including the National Institute of Stand-
20   ards and Technology.

21   **SEC. 7. DEFINITIONS.**

22       In this Act:
23       (1) DIRECTOR.—The term ''director'' means
24   the director of the National Alert Office.

22

1       (2) OFFICE.—The term ''Office'' means the

2 National Alert Office established by section 4.

3       (3) NATIONAL ALERT SYSTEM.—The term ''Na-

4 tional Alert System'' means the National Alert Sys-

5 tem established by section 2.

6       (4) WORKING GROUP.—The term ''Working

7 Group'' means the National Alert System Working

8 Group on the established under section 5.

9 **SEC. 8. FUNDING.**

10     (a) FUNDING.—Funding for this Act shall be pro-

11 vided from the Digital Transition and Public Safety Fund

12 in accordance with section 3010 of the Deficit Reduction

13 Act of 2005.

14     (b) CREDIT.—The Assistant Secretary for Commu-

15 nications and Information of the Department of Com-

16 merce may borrow from the Treasury beginning on Octo-

17 ber 1, 2006, such sums as may be necessary, but not to

18 exceed $106,000,000, to implement this section. The As-

19 sistant Secretary shall reimburse the Treasury, without in-

20 terest, as funds are deposited into the Digital Television

21 Transition and Public Safety Fund.

○