UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOAH DUGUID,<br>        Plaintiff,<br>    v.<br>FACEBOOK, INC.,<br>        Defendant. | Case No. 15-cv-00985-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: ECF No. 24 |

Before the Court is Defendant Facebook, Inc.'s Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 24. Plaintiff Noah Duguid opposes the motion. ECF No. 30. For the reasons set forth below, the Court will grant the motion to dismiss.

I.     BACKGROUND

For the purpose of deciding this motion, the Court accepts as true the following allegations from Plaintiff's Complaint, ECF No. 1. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

Defendant Facebook, Inc. ("Facebook") operates an online social network. Compl. ¶ 3. As of September 2014, Facebook had 864 million daily active users and 1.35 billion monthly active users. Id. Users often share private information on Facebook. Id. ¶ 4. As an "extra security feature," a user may activate "login notifications" to alert her via text message when her account is accessed from a new device. Id. ¶¶ 4-5. The notifications state: "Your Facebook account was accessed from [internet browser] at [time]. Log in for more info." Id. ¶ 5.

Login notification text messages are often sent to the cellphones of persons who have not authorized Facebook to contact them on their cellphones, who have requested that the notifications stop, or who do not use Facebook. Id. Such messages may be sent several times a day. Id. Facebook's online instructions direct users to change their account settings in order to deactivate

1   login notifications, but provide no solution for persons who receive messages even though they
2   have no Facebook account. Id. at 6, Ex. B. When someone replies "off" to Facebook's text
3   messages, Facebook responds with a message stating, "Facebook texts are now off. Reply on to
4   turn back on." Id. ¶ 7. Notwithstanding this response, Facebook often continues to send
5   unauthorized text messages. Id.

6   Plaintiff Noah Duguid began receiving Facebook login notifications via text message on or
7   around January 25, 2014. Id. ¶ 20. The messages were sent from an SMS short code, 326-65
8   ("FBOOK"), which is licensed and operated by Defendant or one of its agents. Id. ¶ 21. Although
9   Duguid never provided his cellphone number to Facebook or authorized Facebook to send him
10  text messages, he received repeated login notification messages. Id. ¶¶ 22-26. Several example
11  messages are reproduced below:



24  Id. ¶ 22, Ex. D. On or around April 20, 2014, Duguid sent Facebook an email message requesting
25  that the text messages cease. Id. ¶ 27. In response, Facebook sent an automated message directing
26  Duguid to log on to the Facebook website in order to report problematic content. Id. Duguid's
27  efforts to deactivate the messages by responding "off" and "all off" were also unsuccessful. Id.

¶ 28.

On March 3, 2015, Plaintiff filed his complaint against Facebook, alleging violations of the Telephone Consumer Protection Act ("TCPA"). He seeks to represent the following two classes:

> Class 1: All persons within the United States who did not provide their cellular telephone number to Defendant and who received one or more text messages, from or on behalf of Defendant to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.
>
> Class 2: All persons within the United States who, after notifying Defendant that [they] no longer wished to receive text messages and receiving a confirmation from Defendant to that effect, received one or more text messages, from or on behalf of Defendant to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.

Id. ¶ 34.

Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and requests that the Court take judicial notice of certain publicly available webpages. ECF Nos. 24, 24-3. Plaintiff opposes the motion to dismiss. ECF No. 30.

The Court has jurisdiction over this action pursuant to 28 U.S.C. section 1331.

## II.     REQUEST FOR JUDICIAL NOTICE

### A.     Legal Standard

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The Court may also "consider materials incorporated into the complaint," where "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

### B.    Facebook Webpages

First, Defendant requests that the Court take judicial notice of screen shots of three Facebook webpages: Facebook's "Statement of Rights and Responsibilities" and two Help Center webpages titled, "How do I verify my account?" and "How do I add or remove credit card info from my account?".  ECF No. 24-3 at 2; Exs. 1-3.  Defendant argues that the Court may take judicial notice of these exhibits because they are "currently publicly available on Facebook's website—the same website upon which Plaintiff repeatedly relies in his complaint," and "there is no reasonable dispute regarding the information."  ECF No. 24-3 at 3.  Furthermore, Defendant argues, the Court may consider these documents pursuant to the incorporation by reference doctrine because Plaintiff's Complaint relies on and attaches Facebook webpages, and alleges facts relating to the login notification process and the private information that Facebook users may use login notifications to protect.  ECF No. 24-3 at 4-5.  Plaintiff has not filed an opposition to Defendant's request for judicial notice, although he does argue that "Facebook's suppositions are matters outside the pleadings and should not be considered in deciding the motion to dismiss."  ECF No. 30 at 4 n.1.

"'[F]ederal courts considering the issue have expressed skepticism as to whether it is appropriate to take judicial notice of information or documents' from websites when the sole justification for judicial notice is that the information or documents 'appear[] on websites that are created and maintained by a party to the litigation.'"  Punian v. Gillette Co., No. 14-cv-05028-LHK, 2015 WL 4967535, at *5 (N.D. Cal. Aug. 20, 2015) (quoting Gerritsen v. Warner Bros. Entm't Inc., No. 14-cv-03305 MMM (CWx), 2015 WL 4069617, at * 10 (C.D. Cal. Jan. 30, 2015)); see also Fraley v. Facebook, Inc., 830 F. Supp. 2d 785, 795 (N.D. Cal. 2011) (taking judicial notice of document from defendant's website that was cited in the complaint, but denying request for judicial notice as to other webpages created by the defendant).  The Court finds that the inclusion of Exhibits 1, 2, and 3 on Facebook's website "is not, standing alone, a sufficient basis for the Court to grant the request" for judicial notice.  Punian, 2015 WL 4967535, at *5.

Moreover, these documents are not incorporated by reference in Plaintiff's complaint

4

1    because it neither necessarily relies on them nor alleges their contents.  See Coto Settlement, 593

2    F.3d at 1038.  Defendants correctly state that Plaintiff's Complaint discusses the login notification

3    process, includes some Facebook Help Center webpages as attachments, and states that users share

4    private information on Facebook.  ECF No. 24-3 at 4-5.  But the Complaint does not reference or

5    incorporate the account verification process, Facebook's Statement of Rights and Responsibilities,

6    or the process by which users share credit card details with Facebook.  See Fraley, 830 F. Supp. 2d

7    at 795.  The Court therefore denies Facebook's request for judicial notice as to Exhibits 1, 2,

8    and 3.

### C.   Media Reports

Second, Facebook requests that the Court take judicial notice of the following media reports: (1) Sharon Profis, Find out if someone's logging in to your Facebook account, CNET (Dec. 10, 2011, 4:36 AM), http://www.cnet.com/au/how-to/find-out-if-someones-logging-in-to-your-facebook-account/; (2) Alyssa Abkowitz, Wrong Number? Blame Companies' Recycling, THE WALL STREET JOURNAL (Dec. 1, 2011), http://www.wsj.com/articles/SB10001424052970204012004577070122687462582; (3) Alison Griswold, Venmo Money, Venmo Problems, SLATE (Feb. 25, 2015, 8:10 PM), http://www.slate.com/articles/technology/safety_net/2015/02/venmo_security_it_s_not_as_strong_as_the_company_wants_you_to_think.html.  ECF No. 24-3 at 2, Ex. 4-6.  Plaintiff has not filed an opposition to this request.

The Court "may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."  Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2009) (internal quotation marks omitted); accord Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n. 18 (9th Cir. 1999) (taking judicial notice "that the market was aware of the information contained in news articles submitted by the defendants").  The Court therefore takes judicial notice of these publications "solely as an indication of what information was in the public realm at the time." Von Saher, 592 F.3d at 960.

/ / /

### III. MOTION TO DISMISS

#### A. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

#### B. Discussion

Defendant argues that Plaintiff's Complaint should be dismissed for failure to state a claim for three independent reasons. ECF No. 24 at 1. First, Defendant argues that Plaintiff does not adequately allege that the login notifications were sent by an automatic telephone dialing system as required under the TCPA. Id. at 7-12; see 47 U.S.C. § 227(a)(1). Second, Defendant argues that the login notifications fall within the TCPA's exception for calls "made for emergency purposes." ECF No. 24 at 12-15; see 47 U.S.C. 227(b)(1)(A). Third, Defendant argues that because the login notifications are non-commercial security messages sent to protect individual consumers' privacy, they cannot be restricted under the First Amendment. ECF No. 24 at 15-18.[1]

---

[1] In a footnote, Defendant also states that "[i]t is questionable whether Plaintiff has Article III standing for his TCPA claim" because he "does not allege that he pays incrementally for each text he receives or that he in fact paid for the alleged login notifications." ECF No. 24 at 2 n.1. Defendant indicates that it may seek to bring this standing argument "at a later time." Id. The Court does not address the argument in this order.

To state a claim for a violation of the TCPA, a plaintiff must allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012); 47 U.S.C. § 227(b)(1). A text message is a "call" within the meaning of the TCPA. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009). An "automatic telephone dialing system" ("ATDS") is "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). "[T]he clear language of the TCPA 'mandates that the focus must be on whether the equipment has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator.'" Meyer, 707 F.3d at 1043 (quoting Satterfield, 569 F.3d at 951) (emphasis in original). "[A] system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." Satterfield, 569 F.3d at 951.

Plaintiff alleges that "[t]he text messages sent to Plaintiff's cellular phone were made with an ATDS as defined by 47 U.S.C. § 227(a)(1)," and that "[t]he ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." Compl. ¶¶ 29-30. This conclusory allegation that Facebook used an ATDS is not, without more, sufficient to support a claim for relief under the TCPA. Kramer v. Autobytel, Inc., 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (the "naked assertion" that messages were sent "using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator . . . need not be taken as true"); Flores v. Adir Int'l, LLC, No. 15-cv-00076-AB, 2015 WL 4340020, at *3 (C.D. Cal. July 15, 2015) ("Without more, Plaintiff's conclusory allegation that Defendant used an ATDS is little more than speculation, and cannot support a claim for relief under the TCPA"); see also Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (internal quotation marks and alterations omitted)).

7

Because it may be difficult for a plaintiff to identify the specific type of dialing system used without the benefit of discovery, courts have allowed TCPA claims to proceed beyond the pleading stage where a plaintiff's allegations support the inference that an ATDS was used. For example, in Kramer v. Autobytel, the court found that the complaint, read as a whole, contained "sufficient facts to show that it is plausible" that the defendants used an ATDS where the plaintiff alleged that he received messages from a short code registered to one of the defendants, the messages were advertisements written in an impersonal manner, and the plaintiff had no other reason to be in contact with the defendants. 759 F. Supp. 2d at 1171. Similarly, in Kazemi v. Payless Shoesource, Inc., the court concluded that "plaintiff's description of the received messages as being formatted in SMS short code licensed to defendants, scripted in an impersonal manner and sent en masse supports a reasonable inference that the text messages were sent using an ATDS," and the complaint therefore met federal pleading requirements. No. 09-cv-05142-MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010); see also Gragg v. Orange Cab Co., Inc., No. 12-cv-0576-RSL, 2013 WL 195466, at *3 n.3 (W.D. Wash. Jan. 17, 2013) ("Plaintiffs alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more."); see also Scott Dodson, New Pleading, New Discovery, 109 Mich. L. Rev. 53 (2010) (arguing in favor of "limited presuit or predismissal discovery to counteract the information asymmetry and overscreening caused by Twombly and Iqbal").

Where, however, a "[p]laintiff's own allegations suggest direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS," courts conclude that the allegations are insufficient to state a claim for relief under the TCPA. Flores, 2015 WL 4340020, at *4. In Flores v. Adir International, for example, the plaintiff alleged that the defendant was a debt collector that sent him a number of text messages for the purpose of collecting on a specific debt, each of which included the same reference number. Id. The text

messages did not include the plaintiff's name and appeared to follow a generic template, and the plaintiff alleged that he received immediate responses to his "Stop" texts. Id. at *3-4. The court found that while these allegations might support the reasonable inference that the defendant's equipment was capable of some form of automation, they did not suggest the use of an ATDS as defined in the TCPA. Id. at *4-5. To the contrary, "the content of the message, the context in which it was received, and the existence of similar messages all weigh[ed] *against* an inference that Defendant used an ATDS," suggesting instead "that Defendant expressly targeted Plaintiff." Id. at *5 (emphasis in original) (internal quotation marks omitted). See also Daniels v. Cmty. Lending, Inc., No. 13-cv-488-WQH-JMA, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) (plaintiffs did not adequately allege the use of an ATDS where the "alleged calls to Plaintiffs do not appear to have been 'random,' 47 U.S.C. § 227(a)(1); instead the calls are alleged to be directed specifically toward Plaintiffs").

Here, as in Flores, Plaintiff's allegations do not support the inference that the text messages he received were sent using an ATDS. Plaintiff alleges that the login notifications are designed "to alert users when their account is accessed from a new device." Compl. ¶ 4. The text messages follow the following template: "Your Facebook account was accessed from [internet browser] at [time]. Log in for more info." Id. ¶¶ 5, 22. Plaintiff has attached to his Complaint a webpage from Facebook's online Help Center, which explains that users must add their mobile numbers to their accounts in order to receive login notifications by text message. Id. Ex. A. These allegations suggest that Facebook's login notification text messages are targeted to specific phone numbers and are triggered by attempts to log in to Facebook accounts associated with those phone numbers.[2] Although Plaintiff alleges that the operation of this system is "sloppy" because messages are sent to individuals who have never had a Facebook account, have never shared their phone number with Facebook, and/or who have requested deactivation of the login notifications, he does not suggest that Facebook sends text messages en masse to randomly or sequentially

---

[2] In his opposition to the motion to dismiss, Plaintiff acknowledges that "the messages are automatically sent when the subject Facebook account is accessed from an unknown device." ECF No. 30 at 5.

generated numbers.  Id. ¶¶ 5, 8.  As in Flores, "it is at least *possible* that Defendant utilized a system that is capable of storing or generating a random or sequential list of telephone numbers and then dialing them," 2015 WL 4340020, at *4 (emphasis in original), but nothing in Plaintiff's Complaint "nudge[s] [his] claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 547.[3]

In his opposition, Plaintiff suggests that the capacity to produce or store random or sequential numbers is not a necessary feature of an ATDS, citing a 2003 order in which the Federal Communications Commission ("FCC") concluded that a predictive dialer constitutes an ATDS.  ECF No. 30 at 7-13.  The FCC described a predictive dialer as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."  In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14091-93 (2003).  Courts in this district have concluded that the reasoning of the FCC's order is not restricted to predictive dialers.  See Nunes v. Twitter, Inc., No. 14-cv-02843-VC, 2014 WL 6708465, at *1 (N.D. Cal. Nov. 26, 2014) ("Although this language is not crystal clear, it appears to encompass any equipment that stores telephone numbers in a database and dials them without human intervention."); Fields v. Mobile Messengers Am., Inc., No. 12-cv-05160-WHA, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (concluding that there were genuine disputes of material fact regarding whether messages were sent using an ATDS where plaintiffs alleged that the equipment used functioned similarly to a predictive dialer in that it received numbers from a computer database and dialed those numbers without human intervention).

---

[3] Plaintiff also alleges that Facebook sends automatic responses to opt-out texts.  These responses are not actionable under the TCPA.  See Derby v. AOL, Inc., No. 15-cv-00452-RMW, 2015 WL 3477658, at *6 (N.D. Cal. June 1, 2015) ("a single message sent in response to plaintiff's text (or texts) is not the kind of intrusive, nuisance call that the TCPA prohibits"); In Re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961 ¶ 57 at *21 (2015) (describing a ruling in which the FCC "concluded that a one-time text confirming a consumer's request to opt out of future calls did not violate the TCPA").

But Duguid has not alleged that Facebook uses a predictive dialer, or equipment that functions like a predictive dialer. The Complaint plainly alleges that the text messages were sent using an ATDS that "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." Compl. ¶¶ 29-30. As discussed above, the Court concludes that this claim is not plausible, and it will therefore dismiss the TCPA claims for failure to adequately allege that the login notifications were sent using an ATDS.

Because the Court dismisses the complaint on this basis, it need not address Facebook's arguments that the motion should be granted because Plaintiff's allegations establish that human intervention triggered the login notifications, and because the notifications are sent for emergency purposes. The Court also does not reach the argument that imposing liability on Facebook for sending the login notifications would violate the First Amendment. See San Francisco Tech., Inc. v. GlaxoSmithKline LLC, No. 10-cv-03248-JF NJV, 2011 WL 941096, at *2 (N.D. Cal. Mar. 16, 2011) ("Because it concludes that SF Tech's claims are subject to dismissal on other bases, the Court need not decide the constitutional issues presented here, at least at the present time.").

## CONCLUSION

For the foregoing reasons, the motion to dismiss is granted without prejudice. Plaintiff may file an amended complaint within 30 days of the date of this order.

An Initial Case Management Conference is scheduled for June 1, 2016. A Joint Case Management Conference Statement is due by May 18, 2016. See ECF No. 29.

IT IS SO ORDERED.

Dated: March 24, 2016

_____
JON S. TIGAR
United States District Judge