Trinette G. Kent, Esq. (Bar No. 222020)
Of Counsel in Arizona and California
Lemberg Law LLC
10645 North Tatum Blvd.
Suite 200-192
Phoenix, AZ 85028
Telephone:   855-301-2100 ext. 5533
Facsimile:   203-653-3424
E-mail: tkent@lemberglaw.com

Sergei Lemberg (*phv*) (CT Bar. No. 425027)
Stephen Taylor (*phv*) (CT Bar No. 428505)
Lemberg Law LLC
43 Danbury Road
Wilton CT, 06897
Telephone:   (203) 653-2250
Facsimile:   (203) 653-3424
E-mail: slemberg@lemberglaw.com
E-mail: staylor@lemberglaw.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Noah Duguid, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>Facebook, Inc.,<br><br>Defendant. | Case No.:  3:15-cv-00985-JST<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227,** *ET SEQ.*<br><br>**JURY TRIAL DEMANDED** |

For his First Amended Class Action Complaint, Plaintiff, Noah Duguid, by and through his undersigned counsel, pleading on his own behalf and on behalf of all others similarly situated, states as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012).

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Defendant resides in this district and because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

3. Plaintiff is, and at all times mentioned herein was, an adult individual residing in Stevensville, Montana, and is a "person" as defined by 47 U.S.C. § 153(39).

4. Facebook is a California business entity with an address of 1601 Willow Road, Menlo Park, California 94025, and is a "person" as defined by 47 U.S.C. § 153(39).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

5. The TCPA regulates, among other things, the use of automated telephone dialing systems ("ATDS").

6. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a cellular phone without prior express consent by the person being called or an emergency purpose.

7. 47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity–

(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B) to dial such numbers.

8. According to the Federal Communications Commission ("FCC"), an

ATDS "encompass[es] any equipment that stores telephone numbers in a database and dials them without human intervention." *Nunes v. Twitter, Inc.*, No. 14-cv-02843-VC, 2014 WL 6708465, at *1 (N.D. Cal. Nov. 26, 2014); *Fields v. Mobile Messengers Am., Inc.*, No. 12-cv-05160-WHA, 2013 WL 6774076, at *3 (N.D. Cal. Dec. 23, 2013) (concluding there were genuine disputes of material fact regarding whether messages were sent using an ATDS where plaintiffs alleged that the equipment used functioned similarly to a predictive dialer in that it received numbers from a computer database and dialed those numbers without human intervention.").

9.  "Human intervention" means significant human involvement in the dialing of a number, and any human involvement with phone number compilation is irrelevant. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02–278, Report and Order, 18 FCC Rcd. 14014, ¶ 132 (2003) ("The basic function of [ATDS], however, has not changed—the capacity to *dial* numbers without human intervention." (emphasis added and omitted)); *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 654 (N.D.W. Va. 2014) ("[I]t is irrelevant under the FCC's definition of a predictive dialer that humans are involved in the process of creating the lists that are entered into the Campaign Manager software.").

10. Moreover, the FCC has made clear that it is a system's *capacity* to dial randomly or sequentially that determines whether it is an ATDS, not its "present ability." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, FCC 15-72, at ¶ 15 (July 10, 2015) ("2015 FCC Order"); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("[T]he clear language of the TCPA 'mandates that the focus be on whether the equipment has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator.'" (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir.

2009))). In other words, "even when the equipment presently lack[s] the necessary software, it nevertheless [may have] the requisite capacity to be an autodialer." 2015 FCC Order, at ¶ 16.

11. A piece of equipment can possess the requisite "capacity" to satisfy the statutory definition of "autodialer" even if, for example, it requires the addition of software to actually perform the functions described in the definition. 2015 FCC Ruling, at ¶ 18.

12. The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging swervice, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged." This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *see Satterfield*, 569 F.3d at 953.

## FACTS

### A. The Automated Login Notification Process

13. Plaintiff is not a Facebook customer and never provided consent for Facebook to contact him on his cellular telephone.

14. Because consumers often share private information on Facebook, as an "extra security feature," Facebook established an automated "login notification" process through which it sends automated, computer-generated text messages to cellular telephones when a Facebook account is accessed from a new device (computer, smart-phone, tablet, etc.).

15. Facebook's automated Login Approval process generated the texts to Plaintiff and class members.

16. Facebook is the entity sending the text messages: "When you turn on login notifications, we'll send you an alert each time someone logs into your account from a new place." *See* Exhibit A.

17. The Login Approval process was introduced by Facebook on May 12, 2011 from general capability that was first announced on May 13, 2010. *See* https://code.facebook.com/posts/702694856412838/introducing-login-approvals (last visited Apr. 20, 2016).

18. When an account becomes disabled due to suspected fraud, Facebook transmits login notifications by text message:

> Login approvals is a Two Factor Authentication system that requires you to enter a code **we send to your mobile phone** via text message whenever you log into Facebook from a new or unrecognized computer. Once you have entered this security code, you'll have the option to save the device to your account so that you don't see this challenge on future logins.

*See* https://www.facebook.com/notes/facebook-engineering/introducing-login-approvals/10150172618258920 (last visited Apr. 20, 2016) (emphasis added).

19. To be able to transmit text messages, Facebook maintains a database of phone numbers on its computers, and then then transmits alert text messages to selected numbers from its database using its automated protocol.

20. This fully-automated, computerized process is fully described by Facebook here: http://thedinfographics.com/wp-content/uploads/2011/11/facebook-security-2011-infographics.jpeg, including:

**B. Text Messages Sent to Plaintiff**

21. On or around January 25, 2014, Facebook began sending automated, templated text messages to Plaintiff's cellular telephone number, 406-xxx-7935.

22. Facebook sent the text messages from short code 326-65 (spelling FBOOK), an abbreviated telephone number known as an SMS short code licensed and operated by Facebook or one of its agents on its behalf.

23. A true and correct copy of several of the messages received by Plaintiff are produced below:



24. Plaintiff could not "Log in" to a Facebook account to turn off the

messages because he does not have a Facebook account.

25. Following online instructions, and frustrated with text message bombardment, Plaintiff requested that Facebook turn 'OFF' the messages:



26. Facebook's system confirmed to Plaintiff that messages would be turned 'OFF,' yet automated text message bombardment continued:



27. Facebooks text messages were repetitive, template-based and/or impersonal to Plaintiff.

28. The login notification system and its main functionalities are written in a programming language called PHP. *See* https://www.quora.com/What-programming-languages-are-used-at-Facebook (last visited Apr. 20, 2016) ("The frontend is written
7  FIRST AMENDED CLASS ACTION COMPLAINT

in PHP (programming language) . . . .").

29. Facebook's system includes a computerized protocol for creating automated text messages programmed to appear customized to the user.

30. A template for a message sent to plaintiff appears in Facebook's system in the following or a substantially similar form: "Your Facebook Account was accessed from [__BROWSER__] on [__DATE__]. Login for more info."

31. Alternatively, Facebook may be employing other functionally similar methods of assembling templated text messages using computer programs.

32. Using PHP programming code, or substantially similar code in any programming language, and replacing values, Facebook's computer programs then convert the templated message into messages like the messages Plaintiff received as follows:

```php
<?php
$string = ' Your Facebook Account was accessed from from __BROWSER__ on __DATE__. Log in for more info.';

$pattern = '/__BROWSER__/i';
$replacement = 'Chrome';
$string = preg_replace($pattern, $replacement, $string);

$pattern = '/__DATE__/i';
$replacement = date('l jS \of F Y h:i:s A');
$string = preg_replace($pattern, $replacement, $string);

echo $string;
?>
```

Output:

```
Your Facebook Account was accessed from Chrome on Saturday 26th of March
```

```
2016 11:40:40 PM. Log in for more info.
```

33. Thus, what appears to be a customized message is, in fact, done through a computer algorithm with no human involvement.

34. Frustrated by his inability to turn off automated text message spam to his mobile phone, on or around April 20, 2014, Plaintiff sent Facebook a detailed email complaining of the unauthorized text messages to his cell phone and requesting that the text messages cease.

35. In response, Facebook sent Plaintiff an automated email directing Plaintiff to log on to the Facebook website to report problematic "content." Plaintiff responded to the email by re-explaining his issue and stating: "A human needs to read this email and take action. Thank you!" In response, Facebook sent the same automated email as received in response to the first email. *See* Exhibit B.

36. The telephone number messaged by Facebook was assigned to a cellular telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C. § 227(b)(1).

37. The messages from Facebook to Plaintiff were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

**C. Allegations Regarding Capacity of Facebook's System**

38. The text messages sent to Plaintiff's cellular phone were sent with an ATDS as defined by 47 U.S.C. § 227(a)(1) and the FCC, in that Facebook acquired Plaintiff's Number, stored it in a database connected to its telephonic or computer system, and then used its system to send text messages to Plaintiff's cell phone number automatically and without human intervention.

39. No human was involved in the sending of Facebook's text messages to Plaintiff.

40. Like any computer system, Facebook's computer based system, which involves many computer servers equipped with multiple software applications, has the

capacity to generate random numbers. *See* https://en.wikipedia.org/wiki/Pseudorandom_number_generator (last visited Apr. 20, 2016).

41. Facebook's computer based system likewise has the capacity to generate sequential numbers.

42. For instance, it has the capacity to take any number, for instance 310-555-1212, consider it as a 10-digit integer 3105551212, add 1 to it, and get a new sequential phone number.

43. Facebook's system has the capacity to store and dial the random or sequential numbers it generates just like it stored and dialed Plaintiff's number.

44. In the unlikely event that Facebook's system does not already have the capacity to generate random or sequential numbers, that capacity can be trivially added.

45. The following code could be added to Facebook's system to generate random numbers:

```php
1  <?php
2
3  for ($randomNumber = mt_rand(1, 9), $i = 1; $i < 10; $i++) {
4      $randomNumber .= mt_rand(0, 9);
5  }
6
7  var_dump($randomNumber);
```

46. This simplified PHP Code would generate random numbers in Facebook's ATDS system.

47. The Code would generate random numbers as follows:

```
1  string(10) "3446780111"
```

48. The ability to generate sequential numbers could also easily be added to

Facebook's system if it does not have it currently.

49. For instance the following code could be added:

```php
<?php

$howManyYouNeed = 100;
$phonePrefix = 212;
$fromNumber   = 5551212;

for ($i = 0; $i < $howManyYouNeed; $i++) {
    $phoneNumber = sprintf('%3d-%07d', $phonePrefix, $fromNumber+$i);
    print $phoneNumber . "\n";
}

?>
```

50. The following sequential numbers would be generated:

```
212-5551212
212-5551213
212-5551214
212-5551215
212-5551216
212-5551217
212-5551218
212-5551219
212-5551220
212-5551221
212-5551222
212-5551223
212-5551224
212-5551225
212-5551226
212-5551227
```

```
212-5551228
212-5551229
212-5551230
212-5551231
212-5551232
```

### D. Consumer Complaints

51.     Many consumers receive text messages from Facebook even though they did not authorize Facebook to contact them on their cell phones, and many receive messages even after requesting that they stop.

52.     Facebook provides instructions on its website to deactivate the login notification feature.  However, these instructions only address stopping the messages by changing a Facebook user's account settings.  *See* https://www.facebook.com/help/163370983727716 (last visited Apr. 20, 2016). Facebook offers no solution for those receiving the messages despite having no Facebook account.

53.     Online blogs indicate that consumers can also respond "off" to Facebook's text messages to get them to stop.  *See* https://wordimpress.com/how-to-stop-facebook-text-message-notifications/ (last visited Apr. 20, 2016).  Indeed, Facebook responds to such texts with messages stating: "Facebook texts are now off. Reply on to turn back on." *See* ¶ 25 *supra*.

54.     However, Facebook often disregards consumers' requests to stop the login notifications.  Rather than cease as instructed, Facebook continues to knowingly hound consumers with unwanted and unauthorized text messages.  *See* ¶ 25 *supra*.  As one Facebook user complained, "I have tried texting 'Off' 'OFF' 'off' 'STOP' 'Stop'. NONE of them have stopped the text messages.  If I get one more text message from Facebook I will delete the whole account."  https://wordimpress.com/how-to-stop-

facebook-text-message-notifications/ (last visited Apr. 20, 2016).

55. Servicing over a billion Facebook accounts worldwide, Facebook's automated systems are powerful and, when used improperly, capable of extreme invasions into the privacy of American consumers. *See* http://webapps.stackexchange.com/questions/59001/how-can-i-stop-notifications-from-an-unknown-facebook-account-to-my-new-phone (last visited Apr. 20, 2016) (consumer complaining of receiving text messages from Facebook "at all hours of the night"). Facebook operates a sloppy system and in doing so shows complete disregard for the privacy of consumers.

56. Plaintiff is such a consumer and he seeks relief for himself and all others similarly situated from Facebook's unlawful behavior.

## CLASS ACTION ALLEGATIONS

### A. The Class

57. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

58. Plaintiff represents, and is a member of the following classes:

**Class 1: All persons within the United States who did not provide their cellular telephone number to Defendant and who received one or more text messages, from or on behalf of Defendant to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.**

**Class 2: All persons within the United States who, after notifying Defendant that it no longer wished to receive text messages and receiving a confirmation from Defendant to that effect, received one or more text messages, from or on behalf of Defendant to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.**

59. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes, but believes the Class

members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

### B. Numerosity

60. Upon information and belief, Defendant has sent text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

61. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

### C. Common Questions of Law and Fact

62. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. These questions include:

   a. Whether Defendant sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;
   b. Whether Defendant can meet its burden of showing it obtained prior express consent to send each message;
   c. Whether Defendant's conduct was knowing and/or willful;
   d. Whether Defendant is liable for damages, and the amount of such damages; and
   e. Whether Defendant should be enjoined from such conduct in the future.

63. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express consent is accurate, Plaintiff and the Class members will have identical claims capable

of being efficiently adjudicated and administered in this case.

## D. Typicality

64. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## E. Protecting the Interests of the Class Members

65. Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

## F. Proceeding Via Class Action is Superior and Advisable

66. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecutions of separate claims against Facebook is small because it is not economically feasible for Class members to bring individual actions.

67. Management of this class action is unlikely to present any difficulties. Several courts have certified classes in TCPA actions. These cases include, but are not limited to: *Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

## COUNT I
## Violations of the Telephone
## Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

68. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

69. Defendant sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Classes without their prior express

consent.

70. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA.

71. Plaintiff and the Classes are entitled to an award of $500.00 in statutory damages for each message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

72. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

73. Additionally Plaintiff and the Classes are entitled to and do seek a declaration that:

  i. Defendant violated the TCPA;
  ii. Defendant's system is an ATDS; and
  iii. Defendant placed text messages to Plaintiff and the Classes without prior express consent.

## COUNT II
## Knowing and/or Willful Violations of the
## Telephone Consumer Protection Act,
## 47 U.S.C. § 227, *et seq.*

74. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

75. Defendant knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Classes without their prior express consent.

76. Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

77. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Classes are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C.

§ 227(b)(3)(C).

78. Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

79. Additionally Plaintiff and the Classes are entitled to and do seek a declaration that:

    i. Defendant knowingly and/or willfully violated the TCPA;

    ii. It is Defendant's practice and history to willfully disregard consumers' valid requests that Defendant cease placing text messages to their cellular telephones.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Classes the following relief against Defendant:

1. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;
2. Declaratory relief as requested;
3. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);
4. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);
5. An award of attorneys' fees and costs to counsel for Plaintiff and the Classes; and
6. Such other relief as the Court deems just and proper.

### **TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED: April 22, 2016        NOAH DUGUID,

By:  */s/ Sergei Lemberg (Pro Hac Vice)*
Trinette Kent, Esq. (Bar No. 222020)
Lemberg Law, LLC
Attorneys for Plaintiff, Noah Duguid

17       FIRST AMENDED CLASS ACTION COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2016, a true and correct copy of the foregoing document was electronically filed with the Clerk of the United States District Court of the Northern District of California by using the CM/ECF system, which will send notice of such filing to all counsel of record.

Elizabeth L. Deeley
Kristin I Sheffield-Whitehead
Kirkland & Ellis LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Tel: (415) 439-1400
Tel: (415) 439-1420
Fax: (415) 439-1500
edeeley@kirkland.com
kwhitehead@kirkland.com

Andrew B. Clubok
Carrie J Bodner
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
Tel: (212) 446-5912
Fax: (212) 446-6460
Andrew.clubok@kirkland.com
Carrie.bodner@kirkland.com

Susan E. Engel
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005-5793
Tel: (202) 879-5000
seengel@kirkland.com

*/s/ Trinette Kent*
Trinette Kent

FIRST AMENDED CLASS ACTION COMPLAINT