UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NOAH DUGUID,

    Plaintiff,

    v.

FACEBOOK, INC.,

    Defendant.

Case No. 15-cv-00985-JST

**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**

Re: ECF No. 65

Before the Court is Defendant Facebook, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 65. Plaintiff Noah Duguid opposes the motion. ECF No. 73. For the reasons below, the Court will grant the motion to dismiss with prejudice.

## I. BACKGROUND

### A. Factual History

For the purpose of deciding this motion, the Court accepts as true the following allegations from Plaintiff's First Amended Complaint ("FAC"), ECF No. 53. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

Defendant Facebook, Inc. ("Facebook") offers an "extra security feature" for its consumers through an automated "login notification" process, in which Facebook sends computer-generated text messages when a Facebook account is accessed from a new device. FAC ¶ 14. When an account is disabled due to suspected fraud, Facebook's "Login Approval" process sends a code to a user's mobile phone via text message and requires the user to enter the security code to log into Facebook. Id. ¶ 18. Facebook maintains a database of phone numbers on its computers to transmit these alert text messages to selected numbers. Id. ¶ 19.

Plaintiff alleges that many consumers receive text messages from Facebook even though

they did not authorize Facebook to contact them on their cellphones.  Id. ¶ 51.  Facebook's online instructions to deactivate the login notification feature provide no solution for those who receive the messages despite having no Facebook account.  Id. ¶ 52.  When someone replies "off" to Facebook's text messages, Facebook responds with a message stating, "Facebook texts are now off.  Reply on to turn back on."  Id. ¶ 53.  Even though it sends this response, Facebook often continues to send unauthorized text messages.  Id. ¶¶ 26, 53.

Plaintiff Noah Duguid began receiving automated, templated text messages from Facebook on his cellular phone.  Id. ¶ 21.  These messages were sent from an SMS short code, 326-65 ("FBOOK"), which is licensed and operated by Facebook or one of its agents.  Id. ¶ 22.  Several example messages received by Duguid are reproduced below:



Id. ¶ 23.  Duguid could not "Log in" to turn off the messages because he does not have a Facebook account.  Id. ¶ 24.  He became "frustrated" with the text message bombardment.  Id. ¶ 25.  On or around April 20, 2014, Duguid sent Facebook an email message requesting that the text messages cease.  Id. ¶ 34.  In response, Facebook sent Duguid an automated message directing Duguid to log on to the Facebook website to report problematic content.  Id. ¶ 35.  Duguid's efforts to deactivate the messages by responding "off" and "all off" were also unsuccessful.  Id. ¶¶ 25–26.

Plaintiff alleges that Defendant sent text messages with an automatic telephone dialing

system ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and the Federal Communications Commission ("FCC"). Id. ¶ 38. Specifically, Plaintiff alleges that Defendant's system either has the capacity to generate random or sequential numbers or can add that capacity with code. Id. ¶¶ 40–50.

### B. Procedural History

Plaintiff Noah Duguid filed his original complaint on March 3, 2015, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). ECF No. 1 ¶ 1. On March 24, 2016, this Court dismissed Plaintiff's complaint against Facebook without prejudice. ECF No. 48 at 11. The Court found that Plaintiff failed to adequately allege that text messages from Facebook were sent using an ATDS as required under the TCPA. Id. Plaintiff then filed his FAC, which re-asserted the TCPA violation claim after adding additional factual allegations. ECF No. 53. Plaintiff seeks to represent the following two classes:

> Class 1: All persons within the United States who did not provide their cellular telephone number to Defendant and who received one or more text messages, from or on behalf of Defendant to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.

> Class 2: All persons within the United States who, after notifying Defendant that it no longer wished to receive text messages and receiving a confirmation from Defendant to that effect, received one or more text messages, from or on behalf of Defendant to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.

Id. ¶ 58.

Defendant moves to dismiss Plaintiff's FAC for lack of standing and failure to state a claim under the TCPA. ECF No. 65. Plaintiff opposes the motion to dismiss. ECF No. 73.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(1)

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must

3

dismiss the action." Fed. R. Civ. P. 12(h)(3). A defendant may raise the defense of lack of subject matter jurisdiction by motion pursuant to Federal Rule of Civil Procedure 12(b)(1). The plaintiff always bears the burden of establishing subject matter jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. In considering a facial attack, the court "determine[s] whether the complaint alleges 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Terenkian v. Republic of Iraq, 694 F.3d 1122, 1131 (9th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

### B. Motion to Dismiss Under Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. at 678 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

4

### III. DISCUSSION

Defendant moves to dismiss Plaintiff's FAC for lack of Article III standing pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). ECF No. 65 at 1. The Court concludes that Plaintiff has standing but again fails to state a plausible claim under the TCPA.

#### A. Standing

Defendant first asserts that under the recent decision of Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), as revised (May 24, 2016), Plaintiff lacks Article III standing. The Ninth Circuit squarely rejected that argument in Patten v. Vertical Fitness Group, LLC, et al., No. 14-55980, 2017 WL 460663 (9th Cir. Jan. 30, 2017). The court found that, in passing the TCPA, Congress had purposefully "establishe[d] the substantive right to be free from certain types of phone calls and texts absent consumer consent." Id. at *4. Deferring to Congress's judgment, the court held that a "plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified'" to establish Article III standing. Id. Here, Duguid's allegations that he received unwanted text messages suffice to confer standing.

#### B. TCPA Claim

Defendant offers three reasons why Plaintiff's FAC should be dismissed for failure to state a claim. ECF No. 65 at 1–3. First, Defendant argues that Plaintiff did not adequately allege that the login notifications were sent by an ATDS as defined by the TCPA. Id. at 1–2; see 47 U.S.C. § 227(a)(1). Second, Defendant argues that the login messages fall within the TCPA's exception for calls "made for emergency purposes." ECF No. 65 at 2; see 47 U.S.C. § 227(b)(1)(A). Third, Defendant argues that even if the TCPA reaches the login messages, the TCPA violates the First Amendment as a content-based restriction of speech that cannot survive strict scrutiny. ECF No. 65 at 20. Because the Court again concludes that Plaintiff has failed to plausibly allege the use of an ATDS, it does not reach the latter two of Defendant's arguments.

To state a claim for a violation of the TCPA, a plaintiff must allege that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036,

1043 (9th Cir. 2012); see 47 U.S.C. § 227(b)(1). A text message is a "call" within the meaning of the TCPA. Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009). An "automatic telephone dialing system means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In evaluating whether equipment constitutes an ATDS, "the clear language of the TCPA 'mandates that the focus must be on whether the equipment has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator.'" Meyer, 707 F.3d at 1043 (quoting Satterfield, 569 F.3d at 951). Thus, "a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." Satterfield, 569 F.3d at 951.

Because it may be difficult for a plaintiff to identify the specific type of dialing system used without the benefit of discovery, courts have allowed TCPA claims to proceed beyond the pleading stage where a plaintiff's allegations support the inference that an ATDS was used. See, e.g., Kramer v. Autobytel, Inc., 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding that the complaint, read as a whole, contained "sufficient facts to show that it is plausible" that the defendants used an ATDS where the plaintiff alleged that he received messages from a short code registered to one of the defendants, the messages were advertisements written in an impersonal manner, and the plaintiff had no other reason to be in contact with the defendants); Kazemi v. Payless Shoesource Inc., No. 09-cv-05142-MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) (concluding that the complaint met federal pleading requirements because the "plaintiff's description of the received messages as being formatted in SMS short code licensed to defendants, scripted in an impersonal manner and sent en masse supports a reasonable inference that the text messages were sent using an ATDS").

But where a "[p]laintiff's own allegations suggest direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS," courts conclude that the allegations are insufficient to state a claim for relief under the TCPA. See Flores v. Adir Int'l, LLC, No. 15-cv-00076-AB, 2015 WL 4340020, at *4 (C.D. Cal. July 15, 2015). Courts generally rely on the message content, the context in which the message was received, and the existence of

similar messages to assess whether an automated dialer was utilized. See id. at *5. In Flores, for example, the plaintiff alleged that the defendant debt collector used an ATDS to send text messages about a debt because the messages were on a generic template that did not refer to the plaintiff by name, though they all included a reference number to identify the plaintiff. Id. at *3. The court acknowledged that it was "at least *possible*" that the defendant utilized a system "capable of storing or generating a random or sequential list of telephone numbers and then dialing them," but that the plaintiff offered no allegations to take his claim "'across the line from conceivable to plausible.'" Id. (quoting Twombly, 556 U.S. at 680). It noted that the messages included a unique reference number, that the messages sought to collect on a "specific" debt, and that other messages contained similar reference numbers and content, all of which "supports the inference" that the defendant "expressly targeted" the plaintiff. Id.

This Court dismissed Duguid's prior complaint because his allegations that Facebook's "login notifications are designed 'to alert users when their account is accessed from a new device'" after "users . . . add their mobile numbers to their accounts" did not plausibly support the inference that Facebook was using an ATDS. ECF No. 48 at 9. It noted that Duguid "d[id] not suggest that Facebook sends text messages en masse to randomly or sequentially generated numbers." Id. at 9–10. Instead, Duguid's allegations indicated that "Facebook's login notification text messages are targeted to specific phone numbers and are triggered by attempts to log in to Facebook accounts associated with those phone numbers." Id. at 9. In line with Flores, this suggested direct targeting that was inconsistent with the existence of an ATDS. The Court also dismissed Duguid's suggestion that since predictive dialers constitute an ATDS, the capacity to produce or store random or sequential numbers is not a necessary feature of an ATDS, given that Duguid "has not alleged that Facebook uses a predictive dialer, or equipment that functions like a predictive dialer." Id. at 11.

Duguid has added a number of new facts to his FAC, but once again fails to plausibly allege that Facebook used an ATDS. Duguid newly alleges that Facebook uses a "computerized protocol for creating automated text messages programmed to appear customized to the user" through a template-based process. FAC ¶¶ 25–30. Additionally, Duguid alleges that in addition

to the login notification process described in the original complaint, Facebook also employs a "Login Approval" process, a two factor authentication system requiring users to "enter a code" sent to mobile phones via text message whenever users log into Facebook from a new or unrecognized device. Id. ¶¶ 15, 18. It is unclear why Duguid believes these facts would strengthen the inference that Facebook sent text messages en masse using an ATDS. To the contrary, allegations of customizable protocols and unique codes only further suggest, in line with Duguid's other allegations, that the messages were sent through direct targeting that is akin to Flores.

Duguid further suggests that Facebook's system "is still an ATDS . . . because it has the capacity to sequentially and randomly dial," given that it is a "computer based system" with "capacity to generate random numbers" and "capacity to generate sequential numbers." ECF No. 73 at 18; FAC ¶¶ 40–41. And even if Facebook's system does not currently have those abilities, Plaintiff argues, the capacity "can be trivially added with minimal computer coding." ECF No. 73 at 18; see FAC ¶¶ 44–50 (providing code that could be added to Facebook's system to generate random or sequential numbers). Duguid's allegations are conclusory. He merely repeats the central elements of an ATDS and asserts that Facebook's system possesses all of them. Nor does the possibility that these elements "can be trivially added" plausibly suggest that they are in fact present here.

In his opposition, Duguid argues that he has plausibly alleged that Facebook uses a "predictive dialer-like system." ECF No. 73 at 11. A predictive dialer, often used by telemarketers, is "equipment that dials numbers" and, when paired with certain software, "has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14091 (2003). Both the FCC and courts in this district have concluded that predictive dialers may fall within the scope of the TCPA. Id. at 14092–93; see, e.g., Nunes v. Twitter, Inc., No. 14-cv-02843-VC, 2014 WL 6708465, at *1 (N.D. Cal. Nov. 26, 2014) (finding that an ATDS "appears to encompass any equipment that stores telephone numbers in a database and dials them without human intervention").

8

Here, however, Plaintiff has again failed to allege the existence of such a system. At best, his allegations are conclusory, given that he merely asserts that Facebook "maintains a database of phone numbers on its computer" and "transmits alert text messages to selected numbers from its database using its automated protocol," without offering any factual support for this claim. FAC ¶ 19. At worst, this claim contradicts the variety of other allegations offered by Plaintiff, which suggest that Facebook does not dial numbers randomly but rather directly targets selected numbers based on the input of users and when certain logins were attempted.

Duguid's reliance on Nunes is also misplaced. See ECF No. 73 at 11. In Nunes, the court noted that "dismissal of the complaint would not be warranted" because the plaintiff plausibly alleged that the defendant's "equipment ha[s] the "capacity to 'generate' numbers at random or sequentially" in addition to its ability to store and dial numbers without human intervention. 2014 WL 6708465, at *1–2. Here, no plausible inference can be made that Facebook's equipment has the capacity to generate random or sequential numbers.

As such, this Court dismisses Plaintiff's TCPA claims for failure to adequately allege that the text messages were sent using an ATDS. Because the Court dismisses the FAC on this basis, it need not address Facebook's arguments that the allegations show human intervention triggered the messages and that the messages were sent for emergency purposes. Likewise, the Court does not reach the argument that the TCPA violates the First Amendment. See San Francisco Tech., Inc. v. GlaxoSmithKline LLC, No. 10-cv-03248-JF NJV, 2011 WL 941096, at *2 (N.D. Cal. Mar. 16, 2011) ("Because it concludes that SF Tech's claims are subject to dismissal on other bases, the Court need not decide the constitutional issues presented here, at least at the present time.").

This is Plaintiff's second attempt to plausibly allege the existence of an ATDS, and he has been unable to do so. Plaintiff does not offer any additional allegations that he could provide if given further leave to amend, and the Court is unable to identify any, given that his current allegations strongly suggest direct targeting rather than random or sequential dialing. Accordingly, the Court concludes that further amendment would be futile, and dismisses Plaintiff's complaint with prejudice.

**CONCLUSION**

For the foregoing reasons, the Motion to Dismiss Plaintiff's First Amended Complaint is granted with prejudice.

IT IS SO ORDERED.

Dated: February 16, 2017

_____
JON S. TIGAR
United States District Judge