UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOAH DUGUID,<br><br>          Plaintiff,<br><br>     v.<br><br>FACEBOOK, INC.,<br><br>          Defendant. | Case No.15-cv-00985-JST<br><br>**ORDER DENYING MOTION TO SET ASIDE**<br><br>Re: ECF No. 104 |

Before the Court is Plaintiff's motion to set aside the Court's Order dismissing Plaintiff's first amended complaint. ECF No. 104.[1] The Court will deny the motion.

## I.   BACKGROUND

On February 16, 2017, the Court dismissed with prejudice Plaintiff's first amended complaint. ECF No. 101. The Court concluded that Plaintiff had failed to plausibly allege that Defendant Facebook, Inc. ("Facebook") had sent the challenged text messages using an Automatic Telephone Dialing System ("ATDS"). Id. In so finding, the Court compared Plaintiff's allegations with those made in Flores v. Adir International, LLC, 2015 WL 4340020 (C.D. Cal. July 15, 2015):

> This Court dismissed Duguid's prior complaint because his allegations that Facebook's "login notifications are designed 'to alert users when their account is accessed from a new device'" after "users . . . add their mobile numbers to their accounts" did not plausibly support the inference that Facebook was using an ATDS. ECF No. 48 at 9. It noted that Duguid "d[id] not suggest that Facebook

---

[1] A month before filing this motion, Plaintiff filed a notice of appeal of the Court's February 16 Order in the Ninth Circuit. ECF No. 102. On July 12, 2017, the Ninth Circuit issued an order staying the appeal until August 2, 2017 and indicating that this district court had jurisdiction to issue only an "indicative ruling" on the present motion. The parties should construe the present order in that light.

sends text messages en masse to randomly or sequentially generated numbers." Id. at 9–10. Instead, Duguid's allegations indicated that "Facebook's login notification text messages are targeted to specific phone numbers and are triggered by attempts to log in to Facebook accounts associated with those phone numbers." Id. at 9. In line with Flores, this suggested direct targeting that was inconsistent with the existence of an ATDS. The Court also dismissed Duguid's suggestion that since predictive dialers constitute an ATDS, the capacity to produce or store random or sequential numbers is not a necessary feature of an ATDS, given that Duguid "has not alleged that Facebook uses a predictive dialer, or equipment that functions like a predictive dialer." Id. at 11.

ECF No. 101 at 7.

Although Duguid added new facts in his amended complaint, none changed the Court's ATDS conclusion. For example, "Duguid newly allege[d] that Facebook uses a 'computerized protocol for creating automated text messages programmed to appear customized to the user' through a template-based process. FAC ¶¶ 25–30." Id. The Court concluded, however, that these "allegations of customizable protocols and unique codes only further suggest, in line with Duguid's other allegations, that the messages were sent through direct targeting that is akin to Flores." Id. at 8. Duguid also added allegations that Facebook's system has the "capacity to generate sequential numbers," or, even if it does not, that the capacity could "be trivially added with minimal computer coding." Id. The Court rejected these additions as a "conclusory" and therefore unhelpful repetition of the "central elements of an ATDS." Id. The Court dismissed Duguid's claims with prejudice.

Plaintiff now moves to set aside that order, arguing that the Court "relied squarely" on Flores, which, on March 24, 2017, the Ninth Circuit reversed in a memorandum disposition. Flores v. Adir Int'l, LLC, No. 15-56260, 2017 WL 1101103, at *1 (9th Cir. Mar. 24, 2017). The Ninth Circuit listed the five key facts alleged in the Flores complaint:

> (1) Adir sent Flores an identical text message on four separate occasions; (2) every time Flores received this text message, he sent a text message back to Adir saying "Stop," and after sending that message, he "almost immediately" received another text message from Adir stating that he would no longer receive text messages from Adir; (3) notwithstanding Adir's representation that Flores would not receive further text messages, Flores continued to receive the same text message on at least three additional occasions; (4) both categories of text messages—the initial texts and the removal confirmation texts—were generically formatted and appeared to be scripted; (4) although the initial texts included a reference number, none of the texts referenced plaintiff directly; and (5) the texts came from an SMS shortcode, which are typically associated with automated

services.

Id. at *1. Based on those allegations and with almost no analysis, the Ninth Circuit held that the district court erred in finding that "Flores did not sufficiently allege the use of an ATDS because his allegations 'suggest direct targeting that is inconsistent with the sort of random or sequential number generations required for an ATDS' and because they suggest that 'Defendants attempts to contact him were anything but random.'" Id. Construing the facts in the light most favorable to Flores, the Ninth Circuit concluded that "it is reasonable to infer that the the [sic] equipment [Adir used] has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, even if it was not presently being used for that purpose." Id. (quoting Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 951 (9th Cir. 2009) (internal quotation marks omitted).

A month before filing this motion, Plaintiff filed a notice of appeal of the Court's February 16 Order in the Ninth Circuit. ECF No. 102.

## II.   LEGAL STANDARD

Where, as here, the Court's ruling has resulted in a final judgment or order, a motion to vacate judgment may be based on Rule 60(b) of the Federal Rules of Civil Procedure. Under Rule 60(b), a movant may seek relief from a final judgment for six reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) voiding of the judgment; (5) satisfaction of the judgment; or (6) any other reason justifying relief. See Fed. R. Civ. P. 60(b); School Dist. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Such a motion must be made within a "reasonable time," and as to grounds for relief (1)–(3), no later than one year after the judgment was entered. See Fed. R. Civ. P. 60(c).

Duguid seeks relief under Rule 60(b)(6). ECF No. 104 at 5. Rule 60(b)(6) is a "catchall provision" that applies only when the reason for granting relief is not covered by any of the other reasons set forth in Rule 60. Samish Tribe v. Washington, 394 F.3d 1152, 1157 (9th Cir. 2005) (overruled on other grounds by United States v. Washington, 593 F.3d 790 (2010)). "It has been used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only

3

where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." Id. (internal quotations omitted).  Thus, to reopen a case under Rule 60(b)(6), a party must establish "both injury and circumstances beyond his control that prevented him from proceeding in a proper fashion." Id. (internal quotations omitted); see, e.g., id. at 1160–61. Mere dissatisfaction with the court's order or belief that the court is wrong in its decision is not adequate grounds for relief.  Twentieth Century–Fox Film Corp v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981).

### III.    ANALYSIS

An "intervening change in the controlling law" can provide a basis for granting a Rule 60(b) motion. Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (quoting 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999); see also Phelps v. Alameida, 569 F.3d 1120, 1132 (9th Cir. 2009) (holding, in a habeas case, that the "per se rule that Rule 60(b)(6) motions cannot be predicated on intervening changes in the law [is] . . . no longer good law").

That said, not just any change in the law meets Rule 60(b)(6)'s "extraordinary circumstances" standard.  Setting the bar too low would undermine principles of finality.  Phelps, 569 F.3d at 1133 (explaining that "the finality of judgments" is one factor to balance in deciding motions to set aside).  In Phelps, for example, the Ninth Circuit granted a Rule 60(b) motion in part because an "intervening change in the law directly overruled the decision for which reconsideration was sought." Id. at 1139.  The court explained that the "intervening precedent resolved a conflict between multiple Ninth Circuit panels that had issued contemporaneous but contradictory memorandum dispositions." Id.

Here, the sole basis for Duguid's Rule 60(b)(6) motion is an unpublished memorandum disposition. Flores, 2017 WL 1101103.  The Ninth Circuit's Flores decision is therefore not "controlling law," let alone precedent that "resolved a conflict between competing and coequal legal authorities." Phelps, 569 F.3d at 1139.   A memorandum disposition cannot resolve a conflict between contradictory authority of any kind.[2]

---

[2] Although Plaintiff is correct that *citations* to memorandum dispositions are not improper, ECF

4

To be sure, the Court analogized to the district court's order in Flores multiple times, and that order is no longer good law. But the Ninth Circuit did not create a new standard for analyzing the ATDS question in FCRA cases (nor could it have done so in a memorandum disposition); it simply determined that the district court erred in concluding, given the facts in Flores, that the defendant could not plausibly have used an ATDS. 2017 WL 1101103 at *1. The facts in Duguid's case, although similar to those in Flores, are not identical. For example, the Court noted in its Order that Facebook's messages in this case were "triggered by attempts to log in to Facebook accounts associated with those phone numbers," ECF No. 101 at 6, whereas in Flores, there was no indication that any action by the plaintiff had caused the defendant to send the challenged message.

Moreover, even setting Flores aside, there is no shortage of FRCA cases discussing the ATDS issue in the Northern District specifically and within the circuit more generally. See, e.g., Weisberg v. Stripe, Inc., No. 16-cv-00584-JST, 2016 WL 3971296, at *4 (N.D. Cal. July 25, 2016); Kazemi v. Payless Shoesource, Inc., No. 09-cv- 5142-MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010); Kramer v. Autobytel, Inc., 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010); Marks v. Crunch San Diego, LLC, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014).[3] Each of these courts engaged in a fact specific inquiry about the content and context of the challenged messages to determine whether the plaintiff plausibly alleged use of an ATDS. The fact that one of these many district court decisions has effectively been erased does not constitute an "intervening change in the controlling law." Marlyn Nutraceuticals, Inc., 571 F.3d at 880.

/ / /

/ / /

/ / /

/ / /

---

No. 107 at 3, that does not change the fact that "[u]npublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." U.S. Ct. App. 9th Cir. Rule 36-3(a).

[3] Marks is on appeal at the Ninth Circuit. See Case No. 14-56834. The appeal is fully briefed and the court heard oral argument, but the case was then stayed pending the D.C. Circuit decision in ACA International v. Federal Communications Commission, et al., No. 15-1211. No. 14-56834, ECF No. 62

**CONCLUSION**

The Court denies Dugid's motion to set aside the February 16 Order under Federal Rule of Civil Procedure 60(b)(6).

IT IS SO ORDERED.

Dated:  July 24, 2017

_____
JON S. TIGAR
United States District Judge